# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**WILLIAM ROGER SHEFFIELD, JR.**                                                                          **PLAINTIFF**

**V.**                                                                                  **CAUSE NO.: 1:07CV172-SA-SAA**

**LEGGETT & PLATT, INC., d/b/a SUPER SAGLESS**                                                            **DEFENDANT**

## MEMORANDUM OPINION

Comes now before this Court, Defendant Leggett & Platt, Inc.'s Motion for Summary Judgment. After reviewing the motion, response, rules, and authorities, the Court makes the following findings:

*Factual and Procedural Background*

Plaintiff began work at Super Sagless on September 14, 1962 as a tool and die apprentice. He received five years of training, and in 1967, was elevated to tool and die maker. Sheffield stayed at this position until 1974 when he was promoted to second shift Tool Room Supervisor. In this position, he supervised the Traffic Tooling hourly employees and New Tooling hourly employees. He was eventually transferred to the first shift, but Sheffield remained the Tool Room Supervisor until 2006.

Beginning in 2005, Leggett & Platt, the company owner of Super Sagless, commenced a series of reductions in force. First, the company laid off hourly workers during 2005. Specifically, thirty-five percent of the Traffic Tooling hourly employees were laid off. Plaintiff admitted there was a lack of work and that none of the layoffs were based on age, none were replaced, and none were hired back. Also in December of 2005, thirty percent of the New Tooling hourly workers were laid off. Plaintiff admits that none of those positions were filled or replaced. Next, in the fall of 2006, non-hourly supervisors and non-production staff were let go. Overall, more than four hundred

Leggett & Platt employees were terminated. Leggett & Platt contends that the reductions in force were necessary as a result of global competition in the furniture industry, primarily from Asia.

Plaintiff was one of those supervisors released from employment on October 12, 2006. Dan Newman, plant manager, contends that Sheffield's position was chosen for termination by himself, aged fifty-seven at that time, and Mark Hodges, aged forty-nine in 2006, because of the reductions in employees supervised in his department, and under the assumption that Sheffield's job duties could be absorbed by Hodges. At the time of his termination, Plaintiff was sixty-two and had been an employee at Super Sagless for over forty years.

Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") complaint alleging he was laid off because of his age. Once issued his right to sue letter, Plaintiff filed this lawsuit on June 20, 2007, alleging age discrimination in his termination under the Age Discrimination in Employment Act ("ADEA"). Plaintiff additionally alleged in his deposition and response to summary judgment that he was discriminated against by not being allowed to assume an hourly position when his supervisory position was eliminated.

Indeed, neither Plaintiff's complaint nor his EEOC charge raised allegations of failure to hire or rehire in an hourly position. Plaintiff's EEOC complaint specifically alleges, "The only reason I could have been chosen for this discharge is the fact of my age being 62, and the fact that I have been in poor health."

One of the primary purposes of an EEOC charge is to put an employer on notice of the existence and nature of the charges against it. Manning v. Chevron Chem. Co., 332 F.3d 874, 879-80 (5th Cir. 2003). A Title VII suit is limited to "the scope of the EEOC investigation which could reasonably grow out of the administrative charge." Fine v. GAF Chem. Corp., 995 F.2d 576, 578 (5th

2

Cir. 1993). A court action cannot encompass facts or issues not relating to the subject matter of the EEOC charge. Id.

The Fifth Circuit Court of Appeals has explained:

The scope of the exhaustion requirement has been defined in light of two competing Title VII policies that it furthers. On the one hand, because "the provisions of Title VII were not designed for the sophisticated," and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally. Sanchez v. Standard Brands, Inc., 431 F.2d 455, 463 (5th Cir. 1970). On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims. Id. at 466. Indeed, "[a] less exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance." Id. at 467. With that balance in mind, this court interprets what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which "can reasonably be expected to grow out of the charge of discrimination." Id. at 466. We engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label.

Pacheco v. Mineta, 448 F.3d 783, 788-89 (5th Cir. 2006) (some citations omitted).

Sheffield's EEOC complaint never alluded to a failure to hire claim. He never mentioned an hourly position, that he desired the position, or that there was a position available. Instead, his charge focused on his discharge and how that was based on his age. An investigation of Sheffield's failure to hire claim could not have reasonably been expected to grow out of his disparate treatment allegations concerning his discharge. Because Sheffield did not include allegations pertaining to any hourly position in his EEOC charge, this Court has no jurisdiction over that claim. Leggett & Platt is entitled to judgment as a matter of law on Sheffield's failure to hire claim.

However, because the Court finds that Plaintiff has presented no evidence of any genuine issue of material fact as to either his discharge or the failure to rehire claim, they are both addressed

below.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. Id. at 323, 106 S. Ct. 2548. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S. Ct. 2548; Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

*Discussion*

The Age Discrimination in Employment Act of 1967 ("ADEA") provides "it shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because

of such individual's age." 29 U.S.C. § 623(a)(1). Specifically, the ADEA is intended to protect employees over forty years of age from discriminatory practices.

Intentional discrimination can be proved through either direct or circumstantial evidence. Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000). If the record is devoid of direct evidence, the plaintiff must bring forth circumstantial evidence to carry his or her burden. Id. A case that involves only circumstantial evidence is governed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

Applying the McDonnell Douglas framework, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. Id. at 802, 93 S. Ct. 1817. In the context of a reduction in force, Plaintiff must demonstrate that he or she (1) is a member of the protected class; (2) suffered an adverse employment action; (3) possessed the qualifications to assume an available position; and (4) can produce direct, circumstantial, or statistical evidence tending to indicate that age was a motivating factor for termination. Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 812 (5th Cir. 1991). The Defendant concedes that Plaintiff satisfied the first and second prong. Therefore, Plaintiff must only address whether he possessed the qualifications to assume an available position and whether he presented evidence showing that age was a motivating factor in his termination.

*A. Discharge*

Defendant contends that there were no available positions for the Plaintiff to fill, and even if there was, Plaintiff did not possess the qualifications to fill that position. As such, Defendant asserts, Plaintiff cannot establish a prima facie case of age discrimination.

Plaintiff does not dispute that from 2005 until 2006, Leggett & Platt reduced their production

5

force by four hundred workers. Indeed, Plaintiff acknowledges that these employees were laid off because there was a lack of work and a decline in the domestic furniture industry. Further, Plaintiff admits that none of the positions that he supervised in the Traffic Tooling and New Tooling sections were replaced and none were rehired. In fact, the Plaintiff does not even submit that there were available positions at the time of his layoff but argues that Leggett & Platt should have terminated another hourly employee in order to retain the Plaintiff.

The Fifth Circuit has held:

> We do not imply that an employer must "bump" younger, less experienced employees from their positions in order to make room for the older and more experienced. The ADEA does not require employers to maintain such a "bumping" policy. See e.g., Barnes v. GenCorp Inc., 896 F.2d 1457, 1469 (6th Cir. 1990). But when there are *vacant* positions similar to the position from which an older employee is terminated, an employer cannot consider age in deciding which employee should be transferred to fill the vacancy.

Walther v. Lone Star Gas Co., 952 F.2d 119, 123 (5th Cir. 1992).

There has been no proof of any vacant positions Plaintiff could fill. Plaintiff contends that at the time of his termination, there were eighteen people working under Sheffield, that Sheffield was older than all eighteen people, and he could have done any of their jobs. In Walther, the Fifth Circuit explained that "the issue is not whether [the Plaintiff] or the retained employees were better qualified. An employer is entitled to make that decision for itself." Id. Further, in reduction in force cases, the plaintiff's qualifications for his job are less relevant since some employees will have to be let go despite competent performance." Id. at 124 (citing Conkwright v. Westinghouse Electric Corp., 933 F.2d 231, 235 (4th Cir. 1991)). Accordingly, since Plaintiff has failed to allege that Defendant had an available position at the time of his layoff and has not rebutted their reduction in force argument, Plaintiff has not met its burden of proof of the prima facie case.

Even if Plaintiff could establish that there was an available position, he has not alleged sufficient evidence to show that age was a motivating factor in his discharge. Plaintiff has failed to bring forth any ageist comments, any evidence of an attempt to be rehired, or any statistical evidence that a disproportionate number of older workers to younger workers were being laid off pursuant to the reduction in force. As such, Plaintiff has wholly failed to put forth enough evidence to satisfy his prima facie case.

*B. Failure to Rehire*

Although Plaintiff does not allege that Leggett & Platt breached any contract, Sheffield does state that when he moved positions from hourly to supervisory in the 1970's, his supervisor promised him that if being a supervisor did not work out, he could go back to being an hourly employee. Plaintiff asserts that this unfulfilled promise by a prior supervisor is evidence of age discrimination.

Defendant notes that in 1994, Leggett & Platt acquired Super Sagless from the Mohasco Corporation. A corporate representative has sworn that Leggett & Platt assumed no liabilities or contracts that were in effect between Mohasco and the employees of Super Sagless. Further, Leggett & Platt is not a corporate successor to Mohasco and disavows any promise made that was not expressly assumed in the sale documents.

Plaintiff argues that because another supervisor, Mike White, was offered an hourly non-supervisory position in lieu of being laid off, he should have been given the same opportunity. Plaintiff asserts the failure of Leggett & Platt to rehire him as an hourly employee is proof of age discrimination.

Mike White was employed as a supervisor in the Cold Heading Department of Leggett & Platt. He was given the option to be demoted to an hourly position when he was in his early fifties.

Defendant argues that White was not demoted to an hourly position as an accommodation to him; rather, the company had to retain White because he had specialized knowledge and skills critical to the unique production equipment used in the Cold Heading Department.

Leggett & Platt further explained that in 1996, in updating its manufacturing technology, it purchased four Cold Heading machined from Japan which cost between $290,000 and $400,000 each. White was specially trained on these machines by Japanese representatives who flew to Tupelo to personally train him on configuring, disassembling and reassembling, and other instruction on the machines. White then traveled to China to train other Super Sagless company personnel in the operation of the advanced Cold Heading machinery. Plaintiff did not receive this training and was not the supervisor of the Cold Heading Department.

Plaintiff was a supervisor over the Tool Room which consisted of supervising the New Tooling employees and the Traffic Tooling employees. The New Tooling employees designed and built new dies with computer-aided design (CAD) technology, of which Plaintiff was not trained. The Traffic Tooling employees sharpened and repaired worn out or broken dies. The Plaintiff had performed that work before the early 1970's when he received the supervisory position.

Plaintiff also alleges there was a supervisor in the 1990's that was allowed to return to an hourly position in order to remain employed at Super Sagless. However, because that demotion was so remote in time and was not involved in the subject reduction in force, Plaintiff's attempt to make this situation substantially similar fails. Likewise, Mike White and the Plaintiff occupied two completely different positions and were differently qualified within those departments. Plaintiff had no specialized knowledge or skills specific to the Tool Room, while Leggett & Platt had substantially invested in Mike White's Cold Heading education and expected him to maintain the machines even

as an hourly employee. Thus, evidence that Leggett & Platt allowed Mike White or other supervisors to retain hourly positions when their supervisory positions were terminated is inapposite to this case.

Further, the record reflects no policy or practice of the employer that obligated it to transfer, recall, or otherwise rehire Sheffield or any other laid off employee included in the reduction in force. Plaintiff acknowledges that no such policy exists. Nor does the record reflect any established policy or practice pursuant to which other younger employees were rehired, except where that younger employee was substantially more skilled in his department. Thus, Leggett & Platt was under no duty to rehire Sheffield; it was only under a duty not to discriminate against him. See Grubbs v. North Miss. Med. Center, 140 F.3d 1037 (5th Cir. 1998).

*C. Legitimate, Non-Discriminatory Reason and Pretext*

Even if Plaintiff could establish a prima facie case of age discrimination, Defendant has raised a legitimate, non-discriminatory reason for terminating the Plaintiff, and Plaintiff must prove by a preponderance of the evidence that defendant intentionally discriminated against him. Machinchick v. PB Power, Inc., 398 F.3d 345, 352 (5th Cir. 2005). Plaintiff can accomplish this either by proving that the proffered reason is a pretext for discrimination, or that the defendant's reason, although true, is only one of the reasons for its conduct, and that plaintiff's age was a motivating factor. Id.

Dan Newman, plant manager of Super Sagless, stated that reduced volume in the Tool Room caused Sheffield's layoff. That reduction in force was due to increasing global competition, mainly from Asia. Newman explained that Leggett & Platt was switching its production to foreign factories for both foreign and domestic markets in order to compete in the global market. Hourly positions, as well as supervisory positions, were being terminated during the 2005-2006 reduction in force.

9

When asked about the reduction in force and the number of persons in his department laid off and the reason they were laid off, Sheffield responded, "I suppose they was laid off same reason I was laid off: Lack of work." Thus, Plaintiff has failed to rebut Defendant's legitimate, non-discriminatory reason for the termination. Further, Plaintiff has failed to establish that age was the defining reason or even a motivating factor in his termination.

*Conclusion*

Accordingly, Defendant's Motion for Summary Judgment is GRANTED. Plaintiff has failed to establish his prima facie case of age discrimination for termination. Moreover, even though he did not charge the Defendant with failure to rehire in his EEOC charge, with the facts alleged for that cause of action, Plaintiff is unable to meet his burden in establishing a prima facie case for age discrimination in failure to rehire. Further, even if Plaintiff did meet the initial burden under McDonnell Douglas, he could not overcome Defendant's legitimate non-discriminatory reason for the adverse employment action either by pretext or mixed motive.

SO ORDERED, this the  13th  day of August, 2008.

 /s/ Sharion Aycock  
**U.S. DISTRICT JUDGE**